UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:18-CR-386-T-17CPT

GERMINIO ORTIZ PERLAZA,
ANGEL MARIN
JAILER ALEXIS SEVILLANO
PRECIADO

_____/

ORDER

This cause is before the Court on:

    Dkt. 35    Motion to Dismiss Indictment
    Dkt. 45    Response

Defendant Germinio Ortiz Perlaza, joined by co-Defendants Angel Marin and Jailer Alexis Sevillano Preciado, moves to dismiss the Indictment pursuant to Fed. R. Crim. P. 12, because the charged offenses stem from an unconstitutional statute, 18 U.S.C. Sec. 2285. Defendants contend that 18 U.S.C. Sec. 2285 exceeds the scope of Congress' enumerated power under Article I, section 8, clause 10 of the U.S. Constitution, and is void for vagueness in that the statute contains essential terms that are not adequately defined, as applied.

The Government opposes Defendants' Motion to Dismiss.

I.    Background

The Court takes judicial notice of the Coast Guard reports of the boarding of Defendants' vessel on August 21, 2018 on the high seas. (Def. Exh. 88-2, 88-3, 88-6, 88-7).

Case No. 8:18-CR-386-T-17CPT

On August 21, 2018, while on routine patrol in the Eastern Pacific onboard United States Coast Guard Cutter Seneca, a Coast Guard Patrol aircraft spotted Defendants' vessel. The Coast Guard launched a small boat to investigate. The Coast Guard boarded the vessel and conducted an investigation. Defendants were moved to the SENECA while the investigation was conducted; after the investigation Defendants were detained. When the Coast Guard boarded the vessel, the master made a verbal claim of Colombian registry, with no supporting documentation. The government of Colombia neither confirmed nor denied the claim, rendering the vessel stateless. 46 U.S.C. Sec. 70507(b)(6).

Part I of the "Law Enforcement Case Package Checklist" provides the following description of the vessel:

> "Other: ENGINES COMPLETELY COVERED WITH GRAY SPRAY PAINT. VESSEL HAD NO VISIBLE MARKINGS. VESSEL WAS COMPLETELY ENCLOSED OF FIBER GLASS CONSTRUCTION GREEN IN COLOR WITH 04 OUTBOARDS, VESSEL HAD A SMALL PILOT HOUSE LOCATED ON THE AFT PORTION."

Part I further provides:

Right of Approach:

Vessel Name: UNID  LPGFV      Homeport: UNKNOWN
Flag State: NONE              Doc./Reg. Number: NONE
Flag State Claim Via:   __x_ Verbal   ____ Flag   ____ Vessel Markings

Pre-Boarding Questions:
(Completed During Right of Visit Boarding)

Case No. 8:18-CR-386-T-17CPT

    Master Name: ORTIZ PERLAZA, GERMANIO    Nationality: COLOMBIA
    DOB: 17JUL1988

    Vessel Owner: N/A    Vessel Length: 41'9"

    Number Crew: 03    Nationality:   COLOMBIAN & ECUADORIAN

    Check One::    ____ Cargo    ____ Passenger    __x__ Fish
    ____ Other

    Purpose of Voyage: CONFLICTING CLAIMS.  ORIGINALLY CLAIMED MEETING WITH ANOTHER VESSEL TO FISH. HOWEVER, NO FISHING GEAR WAS ABLE TO BE PRODUCED.

    LPOC: UNKNOWN    Date Departed: UNKNOWN
    NPOC: COLOMBIA    Date of Arrival: UNKNOWN

(Dkt. 88-2, p. 5).

    Article 110 of the United Nations Conference on the Law of the Sea ("UNCLOS") establishes a "right of visit" when a ship is without nationality; the right of visit allows the ships in government service of any nation to stop any vessel when there is reasonable ground for suspecting that the vessel is without nationality. Although the United States has not ratified UNCLOS, the United States has recognized that its "baseline provisions reflect customary international law." See United States v. Alaska, 503 U.S. 569, 588 n.10 (1992).

    On August 21, 2018, the Government requested that Special Agent Erik G. Holm review digital photographs of the subject vessel, and render an expert opinion as to whether the vessel met the definition of a semi-submersible vessel pursuant 46 U.S.C. Sec. 70502.  Special Agent Holm rendered an opinion that the vessel met the requirements to find it to be a semi-submersible vessel.

Case No. 8:18-CR-386-T-17CPT

Count I of the Indictment charges Defendants, while on the high seas on board a vessel subject to the jurisdiction of the United States, with conspiracy to operate a semi-submersible vessel without nationality and with intent to avoid detection into, through or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, in violation of 18 U.S.C. Sec. 2285(a) and (b). Count II charges Defendants, while on the high seas on board a vessel subject to the jurisdiction of the United States, with knowingly operating a semi-submersible vessel without nationality, with intent to avoid detection into, through, or from waters beyond the outer limit of the territorial sea of a single county or a lateral limit of that country's territorial sea with an adjacent country.

18 U.S.C. Sec. 2285(a) provides:

(a) Offense.–Whoever knowingly operates or attempts or conspires to operate, by any means, or embarks in any submersible or semisubmersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single county or a lateral limit of that country's territorial sea with an adjacent country, with intent to evade detection, shall be fined under this title, imprisoned not more than 15 years, or both. 18 U.S.C. Sec. 2285(a).

This provision incorporates by reference the definitions of "semi-submersible vessel" and "vessel without nationality" at 46 U.S.C. Sec. 70502 (the "MDLEA").

46 U.S.C. Sec. 70502(f)(1) provides:

(1) **Semi-submersible vessel.**---The term "semi-submersible vessel" means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft.

Case No. 8:18-CR-386-T-17CPT

46 U.S.C. 70502(c)(1)(a) provides that a "vessel without nationality" is subject to the jurisdiction of the United States, and defines a "vessel without nationality" in 46 U.S.C. Sec. 70502(d).

18 U.S.C. Sec. 2285 does not define "intent to evade detection", but provides:

> (b) Evidence of intent to evade detection.--For purposes of subsection (a), the presence of any of the indicia described in paragraph (1)(A), (E), (F), or (G), or in paragraph (4), (5), or (6), of section 70507(b) of title 46 may be considered, in the totality of the circumstances, to be prima facie evidence of intent to evade detection.

46 U.S.C. Sec. 70507(b) provides:

> (b) Prima facie evidence of violation.--Practices commonly recognized as smuggling tactics may provide prima facie evidence of intent to use a vessel to commit, or to facilitate the commission of, an offense under section 70503 of this title, and may support seizure and forfeiture of the vessel, even in the absence of controlled substances aboard the vessel. The following indicia, among others, may be considered, in the totality of the circumstances, to be prima facie evidence that a vessel is intended to be used to commit, or to facilitate the commission of, such an offense:
>
> (1) The construction or adaptation of the vessel in a manner that facilitates smuggling, including–
>
> (A) the configuration of the vessel to ride low in the water or present a low hull profile to avoid being detected visually or by radar;
>
> ...
>
> (E) the presence of materials used to reduce or alter the heat or radar signature of the vessel and avoid detection;

Case No. 8:18-CR-386-T-17CPT

    (F) the presence of a camouflaging paint scheme, or of materials used to camouflage the vessel, to avoid detection; or

    (G) the display of false vessel registration numbers, false indicia of vessel nationality, false vessel name, or false vessel homeport.
...

    (4) The operation of the vessel without lights during times lights are required to be displayed under applicable law or regulation and in a manner of navigation consistent with smuggling tactics used to avoid detection by law enforcement authorities.

    (5) The failure of the vessel to stop or respond or heave to when hailed by government authority, especially where the vessel conducts evasive maneuvering when hailed.

    (6) The declaration to government authority of apparently false information about the vessel, crew, or voyage or the failure to identify the vessel by name or country of registration when requested to do so by government authority.

II.    18 U.S.C. Sec. 2285 and Scope of Congress' Enumerated Power Under Article 1, Section 8, Clause 10

Defendants contend that Sec. 2285 exceeds the scope of Congress's enumerated power under Article I, section 8, clause 10 of the U.S. Constitution.

Defendants argue that in United States v. Saac, 632 F.3d 1203 (11th Circuit 2011), the Eleventh Circuit decided the jurisdiction question incorrectly.

In Saac, the Eleventh Circuit noted that when analyzing a constitutional challenge to the Maritime Drug Law Enforcement Act, the Eleventh Circuit previously rejected the argument that Congress exceed its constitutional authority under the High Seas Clause in passing a statute that punishes conduct without a nexus to the United States., relying on United States v. Estupinan, 453 F.3d 1336, 1338 (11th Cir.

Case No. 8:18-CR-386-T-17CPT

2006). The Eleventh Circuit further explained that the MDLEA's extraterritorial reach was justified under the universal principle of international law, that a nation may pass laws to define and punish certain crimes considered to be of "universal concern." 453 F.3d at 1210. The Eleventh Circuit concluded that the DTVIA is also justified under the universal principle, and the exercise of Congress's power under the High Seas Clause is constitutional. 453 F.3d at 1210.

The Eleventh Circuit further noted that, in light of Congress's findings that the operation of submersible/semi-submersible vessels without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States, the protective principle of international law provides an equally compelling reason to uphold the DTVIA. Under the protective principle, a nation "may assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions." United States v. Gonzalez, 776 F.2d 931, 938 (11th Cir.1985). "The protective principle does not require that there by proof of an actual or intended effect inside the United States." Id, at 939. The Eleventh Circuit noted that those who engage in conduct the DTVIA targets threaten the security of the United States by evading detection while using submersible vessels to smuggle illegal drugs or other contraband, such as illegal weapons, from one country to another, and often into the United States.

The Eleventh Circuit further noted that United States Coast Guard reported to Congress that semi-submersible vessels present an emerging and significant threat to maritime law enforcement in that such vessels are difficult to detect and easy to scuttle or sink. The Court noted that semi-submersible vessels facilitate the destruction of evidence and hinder prosecution of smuggling offenses. The Eleventh Circuit concluded that, based on the above significant threat to security,

Case No. 8:18-CR-386-T-17CPT

Congress acted properly and within its constitutional authority under the High Seas Clause in passing the DTVIA. The Eleventh Circuit declined to alter its previous conclusion, raised as a challenge to the MDLEA, as to the scope of Congress's power under the High Seas clause, in connection with a challenge to the DTVIA. 632 F.3d at 1211.

As to United States v. Ibarguen-Mosquera, 634 F.3d 1370 (11th Cir. 2011), Defendants argue the Eleventh Circuit incompletely analyzed the connection between the DTVIA and accepted principles of international law. Defendants argue that a nation's authority to seize a stateless vessel applies to the vessel, but not the crew, such that a nation's authority to seize a stateless vessel does not mean its courts can automatically hear cases involving the crew of the vessel. Defendants recognize that in Ibarguen-Mosquera, the Court considered jurisdiction under the objective principle, the protective principle, and the territorial principle of international law. Defendants argue that nothing in the presently charged statute links the crime to any international principle of jurisdiction.

In response, the Government looks to the Findings and Declarations of Congress when constructing 18 U.S.C. Sec. 2285, and argues that, based on those findings, Congress determined to criminalize not only the underlying conduct–whatever that conduct may be–but also traveling on the vessel itself. United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1381 (11th Cir. 2011); The Government also argues that the Eleventh Circuit has held that "Stateless vessels are...international pariahs that have 'no internationally recognized right to navigate freely on the high seas." United States v. Campbell, 743 F.3d 802, 810 (11th Cir. 2014)(internal quotations omitted).

The Eleventh Circuit Court of Appeals has upheld the constitutionality of 18 U.S.C. Sec. 2285 as within the scope of Congress's authority under Article I,

Case No. 8:18-CR-386-T-17CPT

Section 8, clause 10.  United States v. Valarezo-Orobio, 635 F.3d 1261 (11th Cir. 2011).   While there is no reference to international law within the DTVIA, the DTVIA expressly provides that there is extraterritorial jurisdiction over an offense under this section.  18 U.S.C. Sec. 2285(c).   The DTVIA further provides:

> **(g) Applicability of other provisions.--**
> Sections 70504 and 70505 of title 46 apply to offenses under this section in the same manner as they apply to offenses under section 70503 of such title.

46 U.S.C. Sec. 70504 provides in part:

> **(a) Jurisdiction**.--Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge.

46 U.S.C. Sec. 70505 provides:

> A person charged with violating section 70503 of this title, or against whom a civil enforcement proceeding is brought under section 70508, does not have standing to raise a claim of failure to comply with international law as a basis for a defense.  A claim of failure to comply with international law in the enforcement of this chapter may be made only by a foreign nation.  A failure to comply with international law does not divest a court of jurisdiction and is not a defense to a proceeding under this chapter.

The Court's consideration of concepts of international law is inherent in adjudication of offenses under the DTVIA.  The Court is not persuaded that the protective principle does not apply to offenses under the DTVIA.   Defendants recognize

Case No. 8:18-CR-386-T-17CPT

that the Eleventh Circuit has held that criminal jurisdiction was properly extended to any stateless vessel in international waters. United States v. Marino-Garcia, 679 F.2d 1373, 1383 (11th Cir. 1982).

After consideration, the Court denies the Motion to Dismiss as to this issue.

III.   Terms:   "semi-submersible vessel" and "intent to evade detection"

Defendants contend that 18 U.S.C. Sec. 2285 is void for vagueness because essential terms are not adequately defined, as applied.

Vagueness may invalidate a criminal statute if the statute: 1) fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or 2) authorizes or encourages "arbitrary and discriminatory enforcement." See U.S. v. Eckhardt, 466 F.3d 938, 945 (11th Cir. 2006).  Except where First Amendment rights are involved, vagueness challenges must be evaluated in light of the facts of the case at hand." U.S. v. Fisher, 289 F.3d 1329, 1333 (11th Cir. 2002).

Defendants argue that 18 U.S.C. Sec. 2285 is void for vagueness as applied, because, although "semi-submersible vessel" is defined, there is no standard provided to limit the policing of the statute; the statute gives law enforcement unbridled discretion to determine whether any vessel is within the definition, without minimal objective guidelines.  Defendants also argue that the term "most" is overly broad; it invites the exercise of unbridled discretion by law enforcement to arrest any vessel capable of operating with most of its hull and bulk under the surface of the water without providing notice of what percentage of the hull satisfies the term

Case No. 8:18-CR-386-T-17CPT

"most," and whether such vessels are capable of riding with most of its hull and bulk under the surface of the water if laden with cargo or in rough seas.

Defendants distinguish the analysis in Ibarguen-Mosquera, and argue that the vessel in this case operated far above the measurements in Ibarguen-Mosquera, (4 to 12 inches above the water; nearly completely underwater while moving.) Defendants argue that, in this case, the photographs of the vessel show that the vessel contained outboard motors and a considerable amount of the vessel is above the water. Defendants further argue that no contraband was found aboard the vessel.

Defendants also argue that in this case, the vessel is not clearly covered by under the plain-English meaning of "intent to evade", and the relevant statutory subsections.

Defendants further argue that the vessel in Ibarguen-Mosquera sat very low in the water, was painted ocean blue, and had no headlights or signals. In addition, the Coast Guard observed the path of the vessel to be surreptitious, and the defendants sank the vessel upon the arrival of the Coast Guard.

The Government responds that the term "semi-submersible" is not unduly vague. The term "most" can be quantified; it means more than 50 percent, or, in the context of the burden of proof in a civil case, a preponderance. The term "capable" means to have the ability to do something, in plain English.

The Government responds that "intent to evade detection" has a plain English meaning, and is further defined by the presence of any indicia referenced in 46 U.S.C. 70507(b)(1)(A), (E), (F), (G) or (b)(4)-(6) as *prima facie* evidence of this term.

11

Case No. 8:18-CR-386-T-17CPT

The Government further notes that in this case, the "low-profile go-fast vessel" ("LPGFV") was first spotted by a marine patrol aircraft operating over eighty-five nautical miles west of Malpelo Island, Colombia, in international waters of the Eastern Pacific Ocean. A recording of the LPGFV shows the vessel was operating almost entirely below the water surface. 46 U.S.C. Sec. 70507(b)(1)(A).

The vessel was green in color, a color commonly used by smugglers to blend in with the ocean. 46 U.S.C. Sec. 70507(b)(1)(F). The vessel had no navigational lights and was operating after nightfall. 46 U.S.C. Sec. 70507(b)(4).

Inspection of the LPGFV revealed the vessel was constructed of fiberglass, which traffickers believe has less of a radar signature. 46 U.S.C. Sec. 70507(b)(1)(E).

When the LPGFV was boarded by members of the Coast Guard from the Coast Guard Cutter SENECA, the master made a verbal claim of Colombian registry for the LPGFV, with no supporting documentation. The government of Colombia could neither confirm nor deny this claim, rendering the vessel stateless. 46 U.S.C. Sec. 70507(b)(6).

The reports and imagery of the LPGFV were reviewed by Coast Guard Investigative Service Special Agent Erik Holm, whose opinion further supports the Government's contention that the LPGFV was a "semi-submersible vessel" designed with "intent to avoid detection.".(Dkt. 45, pp. 4-7).

After consideration, he Court finds that the term "semi-submersible vessel" is adequately defined in the statute.

Case No. 8:18-CR-386-T-17CPT

As to the "intent to evade detection," the determination of this issue requires the evaluation of the various indicia, within the context of the totality of the circumstances. The fact that each indicia of the "intent to evade detection" may not be present in every case does not render the "intent to evade detection" vague.

After consideration, the Court denies the Motion to Dismiss as to this issue. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 35) is **denied**.

**DONE and ORDERED** in Chambers in Tampa, Florida on this ___ day of February, 2019.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record